IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-00190-CMA

FELECITA M. MONTOYA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.
_____

**ORDER AFFIRMING IN PART AND REVERSING IN PART THE DECISION DENYING PLAINTIFF'S APPLICATION FOR SOCIAL SECURITY INCOME BENEFITS**
_____

This matter is before the Court on appeal of the Social Security Commissioner's ("Commissioner") decision denying Plaintiff Felecita M. Montoya's ("Plaintiff") application for Social Security Income Benefits under Title XVI of the Social Security Act ("Act"). The Court has jurisdiction to review the Commissioner's Decision pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court affirms in part and reverses in part the Decision.

## I.    BACKGROUND

Plaintiff was born in 1982, has a high school education, is able to communicate in English, and has past relevant work experience as a cleaner, janitor, housekeeper, home attendant, and child monitor. (Doc. # 11-2 at 23). On November 14, 2013, Plaintiff filed an application for Supplemental Security Income Benefits alleging her disability beginning on January 1, 2010 (*Id*. at 11), which the Social Security

Administration ("SSA") denied on February 5, 2014.  (Doc. # 11-3 at 2).  On November 3, 2015, the Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim and issued an unfavorable decision on November 27, 2015. (Doc. # 11-2 at 11-25).  On January 27, 2016, Plaintiff filed a Request for Review of Hearing Decision/Order to the Appeals Council.  (Doc. # 11-2 at 7).  The Appeals Council denied Plaintiff's Request for Review on December 21, 2016, making the ALJ's decision the final decision of the Commissioner.  (Doc. # 11-2 at 2).

## II.     STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards.  *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.* at 1262.  The district court may "not to reweigh the evidence or try the issues de novo" but should "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.* at 1262.  The court should determine if the substantiality test has been met, regardless of whether it would have reached a different result based on the record. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## III.    AUTHORITY

"Disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…" 42 U.S.C. § 423(d)(1)(A). The Act further provides that

> "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy..."

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is disabled. 20 C.F.R. § 404.1512(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. 416.920(a). The steps are:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. …
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. …
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. …
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. ...
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are

not disabled. If you cannot make an adjustment to other work, we
will find that you are disabled. ...

20 C.F.R. § 404.1520(a)(4). A finding that a claimant is or is not disabled at any point in the five-step analysis is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Services*, 933 F. 2d 799, 801 (10th Cir. 1991).

## IV. ANALYSIS

In performing the five-step evaluation process in this case, the ALJ found that Plaintiff: (1) "has not engaged in substantial gainful activity since November 13, 2013, the application date (20 CFR 416.971 *et seq*.)"; (2) "has the following severe impairments: degenerative disc disease, substance abuse, and depression (20 CFR 416.920(c))"; (3) "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1 (20CFR 416.920(d), 416.925 and 416.926)"; (4) "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)" with the following limitations: "[She] cannot climb ladders, ropes or scaffolds; "can occasionally bend, stoop, crouch, and crawl"; "should avoid concentrated exposure to extreme cold, unprotected heights and major manufacturing machinery"; "is limited to unskilled work subject to mild to moderate limitations in social interactions with supervisors, co-workers, and the public"; and "can have occasional interactions, which is the equivalent to two thirds of the day"; and (5) "is capable of performing past relevant work as a cleaner, housekeeping. This work does not require the performance work of

4

work-related activities precluded by the [Plaintiff's] residual functional capacity (20 CFR 416.965)."

The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since November 14, 2013, the date the application was filed (20 CFR 416.920(f).)" (Doc. # 11-2 at 13, 16, 21 and 25). In sum, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…" and do not prove her disability. (Doc. 11-2 at 17).

Plaintiff argues that the Court should reverse the ALJ's decision for failure to apply the correct legal standards, citing to *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Plaintiff contends that the ALJ committed reversible error by failing to follow the rules for weighing particular types of evidence, citing to *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988); *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987), and failing to provide a sufficient basis to determine that he had followed appropriate legal principles, citing to *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984).

**A.    Assessment of David Benson, Ph.D.'s Opinion**

Plaintiff argues that the ALJ erred by not: (1) weighing David Benson, Ph.D.'s ("Dr. Benson") opinion according to the regulatory factors; (2) explaining how much weight he accorded to Dr. Benson's opinion; and (3) accounting for Dr. Benson's finding of a moderate limitation in Plaintiff's ability to respond appropriately to usual work

5

situations and changes in the work setting when the ALJ made findings of her residual functional capacity ("RFC").

Plaintiff's first and second contentions--the weight given to Dr. Benson's opinions and the basis therefor--involve related authority, so the Court addresses them simultaneously. Plaintiff asserts that in the decision, the ALJ must both identify the weight accorded to the opinion of a nontreating source and also explain the basis for said weight, citing to *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers both the weight given to the medical opinion and the reasons therefor. *Id*. The ALJ is to weigh every medical opinion and, unless the treating medical opinion is given controlling weight[1], is to use the six factors described in 20 C.F.R. § 416.927(c)[2] when doing so.

Since the ALJ did not specify what weight he accorded Dr. Benson's opinions or describe any analysis of them using the six factors of 20 C.F.R. § 416.927(c), the Court cannot determine these findings from the ALJ's decision or review them. The Court cannot determine the impact, if any, of these findings on the ALJ's conclusion regarding Plaintiff's evidence about the intensity, persistence and limiting effects of her allegedly disabling symptoms from her severe impairments. Accordingly, this case must be remanded for a correction of this error.[3]

**B.    Assessment of Michele Hartke, FNP's Opinion**

---

[1] Alhough not a physician, Ms. Hartke provided a medical opinion for Plaintiff as a treating source, which the ALJ did not give controlling weight. (Doc. # 11-2 at 20).
[2] 20 C.F.R. § 404.1527(c) for Title II of the Act includes identical factors for similar use.
[3] Due to the remand, the Court does not address Plaintiff's third contention about Dr. Benson.

6

Since Plaintiff's argument that the ALJ erred by giving Michelle Hartke, FNP's ("Ms. Hartke") opinions of Plaintiff's restrictions little weight will not be affected by the remand, the Court addresses it herein. Plaintiff also contends that the ALJ's reason for rejecting Ms. Hartke's opinion of specific restrictions is invalid and not supported by the evidence. The Court disagrees.

The ALJ gave little weight to Ms. Hartke's August 28, 2015 opinions of Plaintiff's specific restrictions in part because they were inconsistent with her opinions of October 28, 2015. In August, Ms. Hartke opined that Plaintiff could only lift five pounds, sit for four nonconsecutive hours per day, and stand or walk for four nonconsecutive hours per day. (Doc. # 11-8 at 111-3). Then in October, in a Colorado Department of Human Services ("DHS") Med-9 Form for Plaintiff, used by DHS to determine whether Plaintiff was disabled for purposes of state benefits, Ms. Hartke stated that Plaintiff was not totally disabled, but had impairments that substantially precluded her from performing her usual occupation for six months. (Doc. # 11-8 at 95).

The ALJ observed that, although Ms. Hartke's August opinions would easily preclude Plaintiff from working, her October opinions that Plaintiff "was not totally disabled" and that "her conditions were expected to last six months" were so contradictory that he would accord only "little weight" to her opinion that Plaintiff was effectively disabled. The ALJ also described the following interactions between Plaintiff and Ms. Hartke within his decision, much of which is inconsistent with Plaintiff's claim of disability:

7

(1) On February 25, 2014, Plaintiff reported to Ms. Hartke that she had self-harming thoughts but denied wanting to hurt herself and stated that she could access resources to avoid these thoughts. (Doc. # 11-8 at 88).

(2) On May 7, 2014, Plaintiff reported to Ms. Hartke that she was dysfunctional because her boyfriend was shot to death the day before. (Doc. # 11-8 at 87.)

(3) On March 9, 2015, Plaintiff reported to Ms. Hartke that Dr. Hess took her off of narcotic pain medication two months prior and that he was administering only injections for her pain. (Doc. # 11-8 at 96).

(4) On July 14, 2015, Plaintiff reported to Ms. Hartke that she was to get cleared to go rehab for her heroin use, had not used in several days and was not experiencing any withdrawal symptoms but was not feeling well due to pneumonia. (Doc. # 11-8 at 107).

The record also contains other evidence that supports the ALJ's accord of "little weight" to Ms. Hartke's opinion that Plaintiff is disabled:

(1) On December 20, 2013, Plaintiff did not report any mental health barriers in performing her personal care, preparing meals, or doing housework. (Doc. # 11-6 at 37). Plaintiff stated that she could go out in public to shop in stores for household items without any issues. (*Id*., at 38). Plaintiff stated she is able to pay bills, count change, and do money orders. (*Id*., at 38). She also stated that she could pay attention for 10 to 20 minutes at a time and could follow written instructions "very well." (Id., at 40). She also stated that

she was able to get along with authority figures "very well" and that she didn't "feel the need to be rude to people of authority." (Id., at 41)

(2) Plaintiff had not experienced any episodes of decompensation of extended duration. (Doc. # 11-2 at 16)

(3) On February 27, 2014, Plaintiff's mental status exam at Spanish Peaks treatment center showed that her orientation was intact, her sleep was increased, and her appetite was average. She had an intact memory, intact insight and judgment, and a minimal impairment in activities of daily living. (Doc # 11-8 at 71)

(4) On August 3, 2015, Plaintiff requested medication to ease her withdrawal symptoms but reported no other significant problems and denied back pain and depression symptoms. (Doc. # 11-8 at 101)

(5) On September 16, 2015, Plaintiff reported that she was unable to get into rehab due to a court appearance and requested medication to help her symptoms but denied back or depression symptoms. (Doc. # 11-8 at 98)

(6) On October 2, 2015, the Plaintiff again reported that she had no back pain or crying spells, anhedonia, or self-harming thoughts. (Doc. # 11-8 at 96)

(7) In both the September 16 and October 2, 2015 dates, Plaintiff's physical exam and mental status exams showed normal results in her psychiatric, neurological, and general well-being. (Doc. # 11-8 at 97, 99).

In addition, the Court notes that Dr. Hess, who treated Plaintiff for her pain issues, declined to provide Plaintiff with the DHS Med–9 Form to support her claim of

disability for purposes of receiving state benefits. On October 2, 2015, Plaintiff reported Dr. Hess' refusal to Ms. Hartke when obtaining the Med–9 Form. Ms. Hartke noted:

> Patient reports that Dr. Hess normally fills out paperwork for neck pain but reports that he is no longer giving her pain medications and is only giving injections so will not fill out the paperwork for her. . . . No medical documentation of cause of disability.

(Doc. # 11-8 at 96).

Based on this and other evidence in the record, the Court rejects Plaintiff's argument that the ALJ's decision to give "little weight" to Ms. Hartke's initial opinion that Plaintiff is disabled is invalid and not supported by the evidence. The Court instead concludes that there is substantial evidence in the record to support the ALJ's assessment of Ms. Hartke's opinion.

## V. CONCLUSION

For the foregoing reasons, the Court REVERSES IN PART and AFFIRMS IN PART the Final Decision of the Commissioner of Social Security. The Decision is REVERSED based on the ALJ's failure to articulate the weight given to Dr. Benson's opinion. The Court REMANDS this case for the ALJ to specify what weight he accorded Dr. Benson's opinions and describe his analysis of Dr. Benson's opinions using the six factors in 20 C.F.R. § 416.927(c). The Decision is otherwise AFFIRMED as stated herein.

DATED: November 30, 2017

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge